## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MMR GENERAL LLC t/a** | : |
| **MONTAGE MOUNTAIN RESORTS, L.P** | : |
| 33 Rock Hill Road, Suite 200 | : |
| Bala Cynwyd, PA  19004 | : |
|         Plaintiff, | : |
|   v. | :    No. |
| | : |
| **TERRACE CAPITAL, INC.** | : |
| 65 Broadway, 7th Floor | : |
| New York, NY   10006 | : |
|     and | : |
| **JOHN DRAGONE t/a** | : |
| **TERRACE CAPITAL, INC.** | : |
| 65 Broadway, 7th Floor | : |
| New York, NY   10006 | : |
|     and | : |
| **TERRACE CAPITAL, LLC** | : |
| One Bridge Plaza, Suite 275 | : |
| Fort Lee, NJ  07024 | : |
|     and | : |
| **DENNIS JOOHYUN BAHN a/k/a** | : |
| **JOOHYUN BAHN** | : |
| 44 River Edge Road | : |
| River Edge, NJ   07661 | : |
|        Defendants. | : |

## <u>COMPLAINT</u>

Plaintiff MMR General, LLC t/a Montage Mountain Resorts, LP, by and through its undersigned attorneys, hereby complains of Defendants Terrace Capital, Inc.,  John Dragone t/a Terrace Capital, Inc., Terrace Capital, LLC, and Dennis Joohyun Bahn a/k/a Joohyun Bahn, as follows:

## I.    <u>THE PARTIES</u>

1.    Plaintiff Montage Mountain Resorts, LP ("**MMR**") is a Pennsylvania limited partnership operating by and through its general partner, MMR General, LLC, and has a principal place of business at 33 Rock Hill Road, Suite 200, Bala Cynwyd, Pennsylvania, 19004.

2.      All of MMR's partners are citizens of the Commonwealth of Pennsylvania.

3.      MMR was created to acquire a controlling interest in Sno Mountain, L.P. ("**SMLP**"), which is the owner and operator of the "Sno Mountain Resort", and to protect the interest of MMR's primary investor, Peter Salvatori, in SMLP.

4.      Defendant Terrace Capital, Inc. ("**TCI**") was a New York corporation with its principal place of business at 65 Broadway, 7th Floor, New York, New York, 10006.

5.      According to the New York State Division of Corporations, TCI was dissolved by proclamation on or about January 26, 2011 and, thus, has lost the benefits of incorporation.

6.      A true and correct printout of the "Entity Information" from the New State Division of Corporations for TCI is attached hereto as **Exhibit "1"** and incorporated herein by reference.

7.      TCI is, and/or was, a citizen of New York.

8.      Defendant John Dragone t/a Terrace Capital, Inc. ("**Dragone**") is an adult individual with a business address of 65 Broadway, 7th Floor, New York, New York, 10006.

9.      It is believed that Dragone was the sole shareholder of TCI, and has continued to conduct business since the dissolution of TCI in the name of "Terrace Capital, Inc."

10.     Dragone is named as a party defendant solely to the extent that TCI is not a valid corporate entity, and is hereinafter referred collectively with TCI as "**Terrace**".

11.     It is believed that Dragone is a citizen of the State of New York.

12.     Defendant Terrace Capital, LLC ("**Affiliated Entity**") is a New Jersey limited liability company with a principal place of business at 65 Broadway, 7th Floor, New York, New York, One Bridge Plaza, Suite 275, Fort Lee, New Jersey, 07024.

13.     Affiliated Entity is a citizen of New Jersey.

2415241v2

14.     Defendant Dennis Joohyun Bahn a/k/a Joohyun Bahn (**"Bahn"**) is an adult individual residing at 44 River Edge Road, River Edge, New Jersey, 07661.

15.     At all times material hereto, Bahn was employed by TCI as a "managing partner" and/or "business development officer".

16.     At all times material hereto, Bahn was acting within his capacity as an employee, agent and/or officer of TCI.

## II.     JURISDICTION AND VENUE

17.     The amount in controversy in this action exceeds the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship because this action is between citizens of different states and the amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

19.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

## III.     BACKGROUND

20.     SMLP is the owner and operator of the Snow Mountain Resort (**"Resort"**).

21.     At all times material hereto, Peter Salvatori ("**Salvatori**") was a limited investor in the SMLP.

22.     On or about September 18, 2007, National Penn Bank (**"Bank"**) extended to SMLP a $7.5 million loan (**"Loan"**) to acquire and operate the Resort, which Loan was secured by a mortgage against the Resort.

23.     SMLP has been in default of its obligation to repay the Loan since December 15,

2011, and the Bank has agreed to forebear from foreclosing on the Resort until January 31, 2012 to provide SMLP time to obtain refinancing.

24.     In order to prevent the Bank's foreclosure of the Resort, MMR agreed to a controlling interest in MMR and its general partner, and refinance the Loan.

25.     In or about October of 2011, MMR approached Terrace and other lenders about refinancing the Loan and acquiring a controlling interest in SMLP.

26.     On October 7, 2011, Terrace sent MMR a "Letter of Interest" (**"LOI"**) offering to extend to MMR a loan in the amount of $11 million (**"Terrace Loan"**).

27.     A true and correct copy of the LOI is attached hereto as **Exhibit "2"** and incorporated herein by reference.

28.     In the LOI, Terrace explained that the offer in the LOI was conditioned upon MMR's acceptance of the terms and payment of a $71,000 deposit (**"Deposit"**):

> "If the terms and conditions of this letter are acceptable, please so indicate by signing the original of this letter in the appropriate spaces and return to the undersigned at Terrace Capital, 1 Bridge Plaza, 2nd Floor, Fort Lee, NJ 07024 within ten (10) days from the date hereof along with underwriting expense of $5,500, estimated third party report fee of $10,500 and good faith deposit equal to 50 basis point of requested loan amount."

29.     The LOI further provided that the Deposit would be returned if Terrace failed to issue a loan commitment or extend the Loan:

> "The deposit will be held by TC as possible penalty compensation should Borrower fail to close after Commitment is issued.  If for any reason Terrace Capital elects not to issue a Commitment to the Borrower, excluding Borrower/Sponsor or Broker misrepresentation, Terrace Capital Shall refund any remaining balance remitted by Borrower to Terrace Capital after deduction of expenses."

30.     The LOI was executed by Bahn as the "Managing Partner" of Terrace.

31.     Bahn executed and sent the LOI at the direction, and/or with the consent, of

Terrace.

32.　　　MMR executed the LOI, and sent to Terrace the executed LOI, together with a check, number 3720 (**"Deposit Check"**), in the amount of $71,000 as the Deposit, on or about October 18, 2011.

33.　　　Terrace, by and through its agent, Bahn, deposited the Deposit Check on October 19, 2011 in an account that belonged to the Affiliated Entity.

34.　　　It is believed that Bahn deposited the Deposit Check in a bank account belonging to the Affiliated Entity as the direction, and/or with the consent, of Terrace.

35.　　　At all times material hereto, Terrace, Terrace, by and through its agent, Bahn, represented to MMR that Terrace would extend the Terrace Loan and enable MMR to acquire a controlling interest in SMLP and save the Resort from foreclosure.

36.　　　In fact, Bahn, on behalf of Terrace, participated in a conference call with, *inter alia*, MMR and the Bank, and represented to the Bank that Terrace would be funding the Terrace Loan to refinance the Bank's Loan and permit MMR to acquire a controlling interest in SMLP.

37.　　　In reliance upon the representations made by Terrace, MMR commenced its due diligence, including the retention of professionals to assist in the acquisition, began covering SMLP's costs and expenses, including Three Hundred Twenty Nine Thousand Dollars ($329,000), to operate the Resort, and ceased its efforts to obtain alternative financing.

38.　　　However, despite its prior representations that Terrace would extend the Terrace Loan, on or about December 21, 2012, Terrace represented to MMR that Terrace, through no fault of MMR, was unable to obtain necessary financing to issue the Terrace Loan in accordance with the LOI.

39.　　　Terrace then submitted to MMR a Letter dated January 9, 2012 (**"Revised LOI"**)

whereby Terrace agreed to extend to MMR a loan in the amount $11.2 million (on less favorable terms) if MMR agreed to submit to Terrace a non-refundable deposit in the amount of $112,000.00.

40.     A true and correct copy of the Revised LOI is attached hereto as **Exhibit "3"** and incorporated herein by reference.

41.     Since MMR had already failed to obtain the Terrace as previously promised, MMR refused to execute the Revised LOI or pay to Terrace any additional deposits.

42.     MMR, rather, terminated the LOI and requested that Terrace return the Deposit.

43.     Terrace, however, refused to return the Deposit.

44.     By letter dated January 19, 2012, MMR again demanded the return of the Deposit.

45.     A true and correct copy of the letter dated January 19, 2012 is attached hereto as **Exhibit "4"** and incorporated herein by reference.

46.     To date, despite MMR's repeated demands, Terrace has failed and refused to return the Deposit to MMR.

47.     All conditions precedent have occurred or have been performed.

## COUNT I – BREACH OF CONTRACT

### (Plaintiff v. Terrace Capital, Inc. and John Dragone t/a Terrace Capital, Inc.)

48.     All paragraphs above are incorporated herein by reference.

49.     At all times material hereto, Terrace offered to extend to MMR the Terrace Loan in accordance with the terms of the LOI.

50.     At all times material hereto, MMR accepted Terrace's offer, and submitted an executed LOI and the Deposit as evidence of its acceptance.

51.     Terrace has failed and refused to extend the Terrace Loan as promised.

52.     Terrace has also failed to return the Deposit to MMR.

53.     Terrace's failure to extend the Loan constitutes a breach of contract.

54.     As a direct result of Terrace's conduct, MMR has suffered damages, including but not limited to the ability, and/or opportunity, to acquire a controlling interest in SMLP and the Resort, and/or to protect its interest in SMLP.

55.     As a direct result of Terrace's conduct, MMR has incurred damages in an amount not less than Four Million Dollars ($4,000,000.00).

**WHEREFORE**, Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus attorneys' fees and costs.

## COUNT II – INTENTIONAL MISREPRESENTATION/FRAUD

### (Plaintiff v. Terrace Capital, Inc., John Dragone, and Dennis Joohyun Bahn a/k/a Joohyun Bahn)

56.     All paragraphs above are incorporated herein by reference.

57.     At all times material hereto, Terrace, by and through its employee, Bahn, repeatedly represented to MMR that Terrace would extend the Terrace Loan if MMR paid the Deposit to Terrace.

58.     At all times material hereto, Terrace, by and through its employee, Bahn, repeatedly represented to MMR that Terrace would hold the Deposit in escrow pending the extension of the Loan.

59.     Bahn made those representations with the knowledge and consent, or at the direction, of TCI and Dragone.

60.     Those representations were false, and Terrace and Bahn knew they were false, in that the Terrace did not, and could not, extend the Terrace Loan to MMR.

2415241v2

61.      Those representations were false, and Terrace and Bahn knew they were false, in that the Terrace did not hold the Deposit in escrow, but transferred the Deposit to the Affiliated Entity in a fraudulent attempt to impair MMR's ability to recover the Deposit.

62.      Terrace and Bahn made those misrepresentations to induce MMR to pay the Deposit.

63.      MMR reasonably relied upon Terrace's misrepresentations to its detriment.

64.      As a result of Terrace and Bahn's fraudulent conduct, MMR has suffered damages, and continues to suffer damages, in an amount yet to be determined but believed to be in excess of Four Million Dollars ($4,000,000.00).

65.      Terrace and Bahn's conduct as set forth above were extreme, outrageous, wanton, reckless and malicious, thereby warranting an award of punitive damages.

**WHEREFORE**, Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus punitive damages, attorneys' fees and costs.

## <u>COUNT III – NEGLIGENT MISREPRESENTATION</u>

**(Plaintiff v. Plaintiff v. Terrace Capital, Inc., John Dragone, and Dennis Joohyun Bahn a/k/a Joohyun Bahn)**

66.      All paragraphs above are incorporated herein by reference.

67.      Terrace and Bahn knew, or through reasonable diligence, should have known, that their representations to MMR as set forth above were false.

68.      Terrace and Bahn failed to exercise reasonable care to ascertain the truth or falsity of their representations to MMR.

69.      MMR reasonably relied upon the negligent misrepresentations of Terrace and

Bahn to its detriment.

70.     As a result of the negligent misrepresentations of Terrace and Bahn, MMR has suffered damages, and continues to suffer damages, in an amount yet to be determined but believed to be in excess of Four Million Dollars ($4,000,000.00).

71.     The negligent misrepresentations of Terrace and Bahn as set forth above were extreme, outrageous, wanton, reckless and malicious, thereby warranting an award of punitive damages.

**WHEREFORE,** Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus punitive damages, attorneys' fees and costs.

## COUNT IV – CONVERSION

### (Plaintiff v. All Defendants)

72.     All paragraphs above are incorporated herein by reference.

73.     Defendants' failure to return the Deposit constitutes a conversion of MMR's property.

74.     Defendants' acts as set forth above constitute an unlawful restraint of MMR's property.

75.     By refusing to return MMR's Deposit, Defendants have deprived MMR of the use and possession of the Deposit without its consent and without lawful justification.

76.     MMR has suffered damages as a result of that conversion, including the impairment of obtaining other financing to acquire a controlling interest of SMLP.

77.     Defendants' conduct in failing and refusing to return the Deposit as set forth above was extreme, outrageous, wanton, willful, reckless, and malicious, thereby warranting the

award of punitive damages.

**WHEREFORE**, Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus punitive damages, attorneys' fees and costs.

### COUNT V – CIVIL CONSPIRACY

#### (Plaintiff v. All Defendants)

78.     All paragraphs above are incorporated herein by reference.

79.     Terrace, Bahn and the Affiliated Company conspired with one another and perhaps others to defraud MMR and/or convert its property.

80.     Terrace, Bahn and the Affiliated Company combined with the specific intent to do an unlawful act, and acted together with a common purpose, to defraud MMR and/or convert its property.

81.     Terrace, Bahn and the Affiliated Company acted with malice and with the specific intent to injure MMR.

82.     Specifically, it is believed that Terrace, Bahn and the Affiliated Company conspired together to defraud MMR and/or convert MMR's property by, *inter alia*, having Bahn misrepresent that Terrace would extend the Terrace Loan and hold the Deposit in escrow pending the issuance of the Terrace Loan.

83.     The actions of As Terrace, Bahn and the Affiliated Company were without justification.

84.     As a result of the unlawful conspiracy of Terrace, Bahn and the Affiliated Company, MMR has suffered damages, and continues to suffer damages, in an amount yet to be determined but believed to be in excess of Four Million Dollars ($4,000,000.00).

85.    The actions of Terrace, Bahn and Affiliated Company to conspire with one another and to defraud MMR and/or convert its property were extreme, outrageous, wanton, reckless and malicious, thereby warranting an award of punitive damages.

**WHEREFORE**, Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus punitive damages, attorneys' fees and costs.

## COUNT VI – NEGLIGENCE

### (Plaintiff v. Terrace Capital, Inc. and John Dragone t/a Terrace Capital, Inc.)

86.    All paragraphs above are incorporated herein by reference.

87.    At all times material hereto, Bahn was an officer and/or employee of Terrace.

88.    Terrace had a duty and obligation to oversee and direct Bahn in his duties.

89.    Terrace failed to properly direct and/or oversee Bahn's conduct, and permitted him to negligently perform his duties, and engage in the improper conduct described above.

90.    As a result of Terrace's failure to properly direct or oversee the actions of Bahn, MMR has suffered damages, and continues to suffer damages, in an amount yet to be determined but believed to be in excess of Four Million Dollars ($4,000,000.00).

**WHEREFORE**, Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus attorneys' fees and costs.

## COUNT VII – UNJUST ENRICHMENT

### (Plaintiff v. All Defendants)

91.    All paragraphs above are incorporated herein by reference.

92.     The Deposit was paid to Terrace to be held in escrow to cover the costs associated with the extension of the Terrace Loan.

93.     Defendants accepted and retained the benefit of the Deposit.

94.     Defendants accepted and retained that benefit under such circumstances that it would be inequitable for them to retain the benefit without payment of value to MMR.

95.     A fair, reasonable, and prevailing value of that benefit to Defendants has yet to be determined but is believed to be in excess of $71,000.00.

**WHEREFORE**, Plaintiff Montage Mountain Resorts, LP respectfully requests the Court to enter judgment in its favor and against Defendant Terrace Capital, Inc. and/or John Dragone t/a Terrace Capital, Inc. in an amount not less than Four Million Dollars ($4,000,000.00), plus attorneys' fees and costs.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By:     _____
        Daniel R. Utain, Esquire (I.D. No. 85619)
        Union Meeting Corporate Center
        910 Harvest Drive, 2nd Floor
        P.O. Box 3037
        Blue Bell, PA  19422
        (610) 941-2582 (direct dial)
        (610) 684-2032 (direct fax)
        dutain@kaplaw.com
        Attorneys for Plaintiff

**Dated:**  February 1, 2012

# EXHIBIT "1"

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through January 18, 2012.

---

Selected Entity Name: TERRACE CAPITAL, INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | TERRACE CAPITAL, INC. |
| **Initial DOS Filing Date:** | DECEMBER 02, 2003 |
| **County:** | SUFFOLK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | INACTIVE - Dissolution by Proclamation / Annulment of Authority (Jan 26, 2011) |

Information to reinstate a corporation that has been dissolved by proclamation or annulment of authority by proclamation is available on the New York State Department of Taxation and Finance website at www.tax.ny.gov keyword TR-194.1 or by writing to NYS Department of Taxation and Finance, Reinstatement Unit/Bldg-8, Rm #958, W.A. Harriman Campus, Albany, NY 12227 or by telephone at (518) 485-6027

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O BUSINESS FILINGS INCORPORATED
187 WOLF ROAD, STE. 101
ALBANY, NEW YORK, 12205

**Registered Agent**

BUSINESS FILINGS INCORPORATED
187 WOLF ROAD, STE. 101
ALBANY, NEW YORK, 12205

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include

the name(s) and address(es) of the initial officers,
directors, and shareholders in the initial certificate
of incorporation, however this information is not
recorded and only available by <u>viewing the
certificate.</u>

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 10000 | Par Value | .01 |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| DEC 02, 2003 | Actual | TERRACE CAPITAL, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New
York State. The entity must use the fictitious name when conducting its activities or business in New
York State.

NOTE: New York State does not issue organizational identification numbers.

<u>Search Results</u>                    <u>New Search</u>

<u>Services/Programs</u>   |   <u>Privacy Policy</u>   |   <u>Accessibility Policy</u>   |   <u>Disclaimer</u>   |   <u>Return to DOS
Homepage</u>   |   <u>Contact Us</u>

**EXHIBIT "2"**

# Terrace|Capital
#### Real Estate Investment Banking Services

October 7, 2011

**Via Email: jyip@vantage-nyc.com**
Montage Mountain Resorts, LP
Mr. Peter Salvatori
C/O Vantage Mortgage, LLC
Mr. John Yip
45-43 Bell Blvd., 3rd Floor
Bayside, NY 11361

Re:  Letter of Interest / $11MM Bridge Loan
      Premises: 1000 Montage Mountain Road, Scranton, PA 18507

Dear Mr. Salvatori,

Thank you for your interest in the Terrace Capital ("TC") commercial lending programs. The following Letter of Interest is based upon our analysis of the information provided by you regarding the above transaction. This Letter of Interest may be accepted on the following terms within ten (10) days of the date of this letter expiring on October 17, 2011. Thereafter, the terms may be modified to reflect changed market conditions, if any, and/or reissued at the election of TC.

| | | |
|---|---|---|
| Borrower | : | Montage Mountain Resort, LP |
| Loan Amount | : | $11,000,000 (Not to exceed 55% of appraised value or cost) |
| Purpose | : | To provide funding for the bridge loan & permanent loan request for property located at 1000 Montage Mountain Road, Scranton, PA 18507 |
| Interest Rate | : | 12% (Bridge Loan) & 5 Yr Treasury + 450 Bps (Permanent) |
| Term | : | 12 Months plus 6 Months Extension for Bridge Loan and 5 Year Fixed Term for Permanent Loan. |
| Amortization | : | Interest Only for Bridge Loan and 25 Year Amortization for the Permanent Loan. |
| Loan Fee | : | Two (2%) Percent for Bridge Loan and One (1%) Percent for Permanent Loan. |
| Interest Guarantee | : | 18 Months for Bridge Loan. |
| Recourse | : | Full recourse to all Sponsors of the Borrowing entity |
| Cash Management Account | : | May be required. |
| Escrows | : | Real estate taxes and Insurance |

# Terrace | Capital™

Real Estate Investment Banking Services

| | | |
|---|---|---|
| Expenses: | : | The Borrower(s) agrees to pay all costs associated with the Loan including but not limited to, underwriting fees, attorney's fee, lien searches, filing fees, insurance premiums, appraisal reports, environmental reports and engineering reports whether or not closing occurs. TC Underwriting Fee: $5,500 |
| Appraisal | : | At Borrower's expense, Lender shall obtain a current appraisal addressed to it which renders an "as completed" value of not less than $11,000,000 |
| Structural and Environmental Inspection | : | At Borrower's expense, Lender shall obtain a Phase 1 environmental and structural inspection of the subject property to be performed by a qualified environmental and structural inspector. The inspection(s) shall be in a form and substance acceptable to the Lender and shall confirm that the Collateral Property is free from hazardous materials or other unacceptable contaminants. The structural inspection must also indicate the absence of serious structural or mechanical conditions requiring immediate attention in order to preserve mechanical and safety functions as well as the safety and wellbeing of the tenants. |
| Title Insurance | : | Title to the Collateral Property named herein shall be subject to the Lender's approval and shall be good and marketable, free and clear of all defects, liens, encumbrances, security interests, restrictions and easements which are not acceptable to the Lender. The Borrower shall provide, at its expense, title insurance policies in the maximum amount to the loan issued by a title insurance company approved by Lender which insured the full amount of the loan and the priority of the Lender's first lien. The title insurance policy shall be satisfactory to the Lender in all aspects and shall provide such other coverage as may be required by the Lender, including coverage against loss or damage due to a forfeiture or reversion of title caused by a breach of any covenant affecting the property to be covered by title insurance. The title policy may contain no exceptions unacceptable to lender including survey exception and shall include ALTA endorsement 8.1 (environmental protection lien) and such other endorsements as shall be required by Lender. Title policy will be ordered by Terrace Capital, Inc. |
| Survey | : | Two (2) copies of an ALTA survey prepared for the Lender, certified to Title Insurer and the Lender, its successors and assigns, and insurable by Title Insurer, by a land surveyor licensed in the state where the Collateral Property is located and acceptable to the Lender. The survey shall comply with the Lender's minimum standards for surveys and shall include, without limitation: (i) the boundaries of the Collateral Property by courses and distances, together with a metes and bounds description corresponding to such survey; (ii) the location of all improvements; (iii) the location and width of all easements, utility lines, rights-of-way and building set-back lines and notes referencing the book and page numbers for the instruments  granting the same; (iv) the location of all encroachments and restrictions, if any, affecting the property (to the extent the same may be located); and (v) the certification of the surveyor which shall address (a) whether the roads abutting the Collateral Property are publicly dedicated, (b) the acreage of the Collateral Property, (c) whether |

# Terrace | Capital
Real Estate Investment Banking Services

the parcels comprising the Collateral Property (if applicable) are contiguous without any gores, gaps, overlaps or strips of land separating them, (d) whether or not any portion of the Collateral Property is located in a "special flood hazard area", as that term is used in the National Flood Reform Act of 1994, and designating any such property, (e) and such other matters as may be reasonably requested by the Lender or its counsel.

Insurance : Original or duplicate policies of insurance, or evidence of insurance on an ACORD 28 or 29 form (in the case of property insurance) or ACORD 25 form of certificate (in the case of liability insurance), each in affect for a period of not less than nine (9) months following the loan closing date, as follows: (i) "All-Risk" fire and extended coverage hazard insurance (non-reporting Commercial Property Policy with Special Cause of Loss form), covering the Collateral Property in an aggregate amount not less than 100% of the agreed upon full insurable replacement value of the Collateral Property, not less than nine (9) months coverage for loss of rents or business interruption, and naming the Lender, its successors and assigns as their interest may appear, as the first mortgagee under a standard mortgagee endorsement clause; (ii) builder's risk coverage in an amount sufficient to cover the first deed of trust; (iii) comprehensive general public liability insurance covering injury and damage to persons and property with limits acceptable to the Lender and naming the Lenders and its successors and assigns as their interest may appear, as additional insured; (iv) if the Collateral Property is located within "a special flood hazard area" as identified by the Secretary of Housing and Urban Development under the National Flood Insurance Reform Act of 1994, flood insurance in the amount equal to the less of (a) the agreed upon full insurable replacement value of the Collateral Property (less any value attributable to the Collateral property) or (b) the maximum available amount through the Federal Flood Insurance Program, and naming the Lender, its successors and assigns as their interests may appear, as the first mortgagee under a standard mortgagee endorsement clause. The above described insurance certificate(s) shall be specifically amended as necessary to establish that the certifying insurer expressly agrees to give Lender not less than 30 days' prior written notice of any policy cancellation (not merely that the insurer will "endeavor" to do so). Each policy (if more than one) must be issued by an insurer accepted to Lender in an amount equal to the amount of the maximum loan amount of the combined notes.

Flood Certification/ Insurance : The Borrowers shall provide such other coverage and certification relating to flood hazards (if any) as shall be acceptable to Lender.

Laws and Regulation : The ownership and operation of the Collateral Property must be approved by all federal, state, and local authorities having jurisdiction and must comply with all applicable federal, state, and local laws, rules, regulations and ordinances.

Other Special Covenants : Other covenants standard and customary for transaction of this type including but not limited to limitations on additional indebtedness and

**Terrace | Capital**
Real Estate Investment Banking Services

limitations on ownership changes without the prior written consent of the Lender, shall be observed during the term of this loan.

| | | |
|---|---|---|
| Subordinate Financing | : | Subordinate financing shall be prohibited for the life of the loan without the prior written consent of Lender. |
| Confidentiality | : | This Letter of Interest is delivered to you with the understanding that neither it, nor its substance, will be disclosed to any third party, except your accountant, attorney or financial advisor with respect to this transaction or where disclosure is required by law. |
| Collateral | : | 1) A first priority mortgage on the Collateral Properties also known as Sno Mountain Ski Report located at 1000 Montage Mountain Road, Scranton, PA 18507. <br> 2) Assignment of Leases and Rents |
| Warranties | : | Borrower(s) and Guarantor(s) hereby warrant that (i) there is no litigation or administrative or judicial proceedings existing, pending or planned that would in any manner adversely affect the Borrower's ability to repay, (ii) that the Loan proceeds will be used solely for the commercial and business purposes of Borrower's and not for personal, family or household purposes, (iii) that any litigation now pending or threatened against Borrower is adequately covered by existing liability insurance. All warranties shall be true as of the date of Loan closing. Borrower agrees to promptly inform Lender of any event which causes any of these warranties to become untrue and from time to time, to execute and deliver to Lender, upon request, such affidavits or certifications affirming the continued truth of said warranties as Lender may request. |
| Time is of the Essence | : | Time shall be of essence for each and every provision of the Letter of Interest and all other documents, agreements and contracts in connection with and governing the loan. |
| Entire Agreement | : | This term sheet contains only an understating between the Lender and Borrower and supersedes any prior understanding and agreements between them in respect to the subject matter hereof. |
| Sale/Syndication | : | TC reserves the right to sell its interest in this Letter of Interest and/or Loan in whole or Part, at its discretion. |
| No Assignment | : | This letter shall not be assignable |
| Broker | : | Vantage Mortgage LLC. Borrower acknowledges and agrees that a fee of Two (2%) Percent of the loan amount is payable by the Borrower to the above identified "Cooperating Broker" at closing of the loan. Such fees are not included in the loan fee(s) to be paid to Terrace Capital. Borrower hereby acknowledges and agrees that TC is not required to compensate the above identified Cooperating Broker or otherwise collect a fee on behalf of such Cooperating Broker. |

# Terrace | Capital"

Real Estate Investment Banking Services

All brokers, agents and third party intermediaries are strictly independent, and are not authorized to represent Terrace Capital as a company, nor make any statements of intent, policy, claims or promises on behalf of the company or any of its executives or staff. TC shall not be bound or obligated by, and no person shall take action in reliance upon, statements of any such independent third parties. Brokers represent their own clients to TC, and do not "represent" TC to any potential or current clients. All third party contracts and claims purporting to provide or include TC services, in whole or in part are willfully and knowingly fraudulent misrepresentations. Any retainers requested or received by or paid to any third parties are not received by TC, do not create a client relationship and do not cause the provisioning of or change in any TC services. All TC services are provided strictly in the context of a direct and contractual financial institution relationship.

| | |
|---|---|
| Closing limitation | This Loan must close by no later than November 30, 2011, TC may withdraw this letter in its sole and absolutely discretion. |
| Other Terms and Conditions : | |

1. Subject to acceptable Borrower/Sponsor credit history in Lender's sole and absolute discretion.

2. Guarantor(s) global EBITDA (Earnings Before Interest, Taxes, Depreciation & Amortization) less all debt service payments (personal & business) must equate to a ratio of 1.25 to 1 or greater.

3. Minimum net worth of Borrower requirement to be equal to 100% of the gross loan amount and minimum net liquidity of borrower to be equal to 5% of the gross loan amount.

4. The form, structure and capitalization of the title owner and borrower must be satisfactory to TC.

5. Site inspection performed by TC.

6. Subject to other underwriting and legal terms and conditions precedent to settlement as determined by Lender.

Please be advised that this letter is not a commitment, but a memorandum based on our preliminary analysis of verbal and written information provided by you to Terrace Capital. Terrace Capital has relied on the accuracy of these representations in qualifying your loan and extending this offer for financing. Material misrepresentations will result in the immediate termination of this offer. Terrace Capital reserves the right to contact the Borrowers directly to verify and qualify certain due diligence material. The final terms of the loan including but not limited to loan amount, rates, and terms are subject to our receipt and review of the third party reports and the completed underwriting of the loan request.

If the terms and conditions of this letter are acceptable, please so indicate by signing the original of this letter in the appropriate spaces and return to the undersigned at Terrace Capital, 1 Bridge Plaza, 2nd

# Terrace|Capital™
### Real Estate Investment Banking Services

Floor, Fort Lee, NJ 07024 within ten (10) days from the date hereof along with underwriting expense of $5,500, estimated third party report fee of $10,500 and good faith deposit equal to 50 basis point of requested loan amount. The deposit will be held by TC as possible penalty compensation should Borrower fail to close after Commitment is issued. If for any reason Terrace Capital elects not to issue a Commitment to the Borrower, excluding Borrower/Sponsor or Broker misrepresentation, Terrace Capital shall refund any remaining balance remitted by Borrower to Terrace Capital after deduction of expenses. If not received within the specified time period, this letter shall become null and void without notice.

We thank you for allowing Terrace Capital, Inc. to assist you on this loan request and look forward to working with you.

Sincerely,

Dennis Bahn
Managing Partner
Terrace Capital, Inc.
T. 201.849.4450 / 201.849.4451
F. 201.221.8366

By signing below, Borrower and key principals authorize Terrace Capital to procure credit reports on the key principals. The terms set forth herein are acceptable. Please provide a Due Diligence Checklist and proceed with my application.

_____     10-18-11
Borrower [or authorized agent] Signature          Date


_____     _____
Borrower [or authorized agent] Name               Date


_____     _____
Borrower [or authorized agent] Signature          Date


_____     _____
Borrower [or authorized agent] Name               Date

EXHIBIT "3"



January 9, 2012

**VIA Email: salvatori31@verizon.net**
Mr. Peter Salvatori
Montage Mountain Resorts, LP
1000 Montage Mountain Road
Scranton, PA 18507

**RE: Commercial real estate loan against real estate located at 1000 Montage Mountain Road, Scranton, PA 18507.**

Dear Mr. Salvatori,

We are pleased to inform you of our commitment to fulfill the financing request for the above referenced project in the amount of Eleven Million Two Hundred Thousand Dollars ($11,200,000.00), providing this agreement is satisfied. This commitment supersedes all previous communications and correspondence without limitation.  This agreement is between Terrace Capital (hereinafter referred to as "TC") and its fund group Liberty Group Fund One, LLC (hereinafter referred to as "LLG") and Peter Salvatori / Montage Mountain Resorts, LP (hereinafter referred to as "Borrower").

**TERMS AND CONDITIONS**

| | |
|---|---|
| Guarantor(s) | Peter Salvatori / Montage Mountain Resorts, LP. |
| Gross Loan Amount: | Eleven Million Two Hundred Thousand Dollars ($11,200,000.00). |
| Term: | Twenty-Four (24) Months. |
| Loan Amortization: | Interest Only. |
| Minimum DSCR: | None. |
| Interest Reserves: | Twelve (12) months / One Million One Hundred Twenty Thousand ($1,120,000.00) Dollars is payable from loan proceeds and taken upon distribution of loan proceeds proportionate to each draw. |
| Repayment Amount: | Eleven Million Two Hundred Thousand Dollars ($11,200,000.00). |
| Interest Guarantee: | Six (6) months of interest is guaranteed to LLG. |
| Annual Interest Rate: | Ten percent (10%) for year one and Thirteen percent (13%) for year two. |
| Maximum LTV: | Fifty (50%) percent. |
| Collateral Description: | First lien against the real estate located at 1000 Montage Mountain Road, Scranton, PA 18507: Tax Map # 186.02-010-001. Site Description: Irregular in shape with frontage on the north and south sides of Montage Mountain Road and a level to steeply sloping tophography, containing 388.94 acres, of which approximately 190 acres have been developed. |



Real Estate Investment Banking Services

|  | Building Description: Renovated, upgraded and expanded ski area, and new water park, with building areas totaling 53,895 square feet. |
|---|---|
| Appraised Value: | Twenty-Four Million ($24,000,000.00) Dollars based on the "as-is" market value. |
| Fees: | Origination fee equals Six Hundred Seventy-Two Thousand Dollars ($672,000.00). Our fees are payable in the following manner: One Hundred Twelve Thousand ($112,000.00) Dollars upon acceptance of this agreement. Five Hundred Sixty Thousand ($560,000.00) is payable at closing to TC and/or LLG and/or its participating brokers. |
| Release Provisions: | During the term of the loan, provided all interest payments on the loan are current on the date of the sale and at the time of the sale there are no uncured defaults under the loan documents, Borrower may sell for cash individual parcel of collateral. LLG agrees to release such sold parcels provided that LLG received the release price for such parcel. The release price will be seventy-five (75%) of the gross sale price of the parcel. |
| Purpose of Loan: | Commercial real estate loan to pay off senior debt from National Penn Bank and various accounts payable. |
| Closing: | The closing shall take place no later than thirty (30) days of receipt of an executed copy of this agreement along with the commitment fee providing the terms of this agreement have been fully satisfied. |

## STIPULATIONS

1. Receipt of a financial package on the Borrower / Collateral, which includes but is not limited to: Year to date and last two years CPA financial statements reported monthly, same for bank statements and last two years of tax returns.

2. Receipt and review of one LLG ordered MAI appraisal. It is clearly understood that LLG will not commission any previous appraiser/appraiser(s) to assess the value of this collateral. The Borrower agrees that the basis for the Loan is the "as-is" market value of the real estate Collateral in its present condition and the "as-is" market value. Market value is defined as a four month sale to a cash buyer. The Borrower understands that LLG will retain, at a cost to the Borrower, Cushman & Wakefield or CB Richard Ellis or any third party MAI appraiser acceptable to LLG to inspect the Collateral and said appraiser will, in its sole discretion, determine the "as-is" market value. If the collateral is determined to have a value which would result in the making of a loan less than that of the financing request the Borrower will be required to provide additional Collateral acceptable to LLG in its sole discretion in order to achieve the aforementioned financing request.

3. Appropriate insurance protecting LLG's interest in the property. A public liability and property insurance policy, with extended coverage and a paid bill, must be presented at closing. A binder will not be acceptable. All insurance policies shall be issued by insurance companies having an A.M Best Key Rating of at least A/IX.

**Terrace|Capital**©
Real Estate Investment Banking Services

4.  If any material part of any parcel of the Collateral is located in an area designated as being subject to a special flood hazard, Borrower shall obtain all available flood insurance.   If insurance is not available, and if such unavailability legally precludes the mortgage from covering such affected parcel, such parcel shall be removed from the Collateral and all Loan amounts recalculated.

 5.  If not fully executed by the Borrower this commitment will expire one week from date of issuance if it does expire the agreed to interest and fees are subject to an increase with any extension.  TC and LLG shall have no obligation with respect to the loan unless and until the commitment letter is fully executed and received by TC along with the entire commitment fee.  Never the less if after sixty days the terms and conditions of this commitment are not met this offer for financing will expire, all fees outlined in the agreement will be deemed earned and TC will have no further obligation to the Borrower, unless the Borrower purchases a thirty day extension.

 6.  Receipt and review of LLG ordered Phase 1 environmental report, title report, survey and legal opinion on same. Compliance of all requirements of the mortgage, Investor conditions, secondary market approval and government agencies having jurisdiction thereof, including but not limited to, zoning and ecological laws or regulations, building permits, and sales and financing legislation. Borrower shall provide LLG with such evidence of compliance as LLG may request.

7.  Borrower agrees that the Loan or the making of the Loan shall be without cost to TC/LLG. All closing costs, interest reserve, fees and escrow, including but not limited to taxes, fire insurance and flood insurance (if required) will be deducted from the proceeds of the mortgage.  Borrower agrees that the interest rate and fees are applicable only to this loan amount.  TC/LLG expressly reserves the right to act as principle or agent in this transaction.

8.  There is no material variation at the time of closing from the information set forth in the application. This agreement is based on information provided by the Borrower and / or their representatives.    Should any of the information contain factual inaccuracies and / or misstatements, including but not limited to net worth, net income and property value TC/LLG Shall not be obligated to proceed and all moneys received will become non-refundable and deemed earned as partial liquidated.

9.  TC/LLG shall have no liability to Borrower, or any other entity or person, under any theory of law or equity for any amount in excess of all fees paid by Borrower to TC/LLG pursuant to this Commitment.  Borrower acknowledges that this limitation of damages clause is reasonable. Borrower agrees not to pursue any claim in excess of the above sum.

10. Borrower and TC/LLG each hereby unconditionally and irrevocably waive any and all right to trial by jury in any suit, counterclaim, or cross-claim arising in connection with, out of, or otherwise relating to this Commitment, the other loan documents, the obligation, the collateral, or any related transaction.

11. Borrower must execute final typed application, together with all necessary disclosures, at the time of closing. Closing to take place at TC/LLG's place of business or any other location designated by TC/LLG. The obligation hereunder shall in no event be assignable without prior written consent of TC/LLG. This document is subject to change, but may only be done so in writing and with approval of all parties.


**Terrace│Capital**®
Real Estate Investment Banking Services

12. No subordinate liens may be placed against this property, and the Borrower, or Guarantors may not enter into any unsecured loans throughout the term of this loan. Exact interest rate will be determined three business days prior to closing.

13. This Commitment is executed by an individual strictly in his capacity as a representative of TC/LLG.  By acceptance of this Commitment, Borrower agrees that no representative, member, partner, shareholder, employee, or agent of TC/LLG shall be personably liable for the payment of any claim or the performance of any obligations hereunder.

14. All fees collected including any part of and the entire commitment fee are earned and non-refundable for, among other things, the commitment to provide funds. If the terms and conditions of this commitment are fully satisfied and TC/LLG is unable to perform, TC/LLG shall only be obligated to refund the paid portion of the commitment fee, less compensation for time and expenses. Said refund shall be the total extent of any liability or obligation on the part of TC/LLG under any circumstance.

15. This commitment is subject to the accuracy of all information, representation, warranties, exhibits and other materials submitted with or in support of the loan request and there must be no adverse change in the set of facts prior to disbursement of funds or during the term of the loan. There will be no refund if the Borrower does not accept the loan made by LLG pursuant to this commitment within three business days or borrower has not complied with all the conditions set forth by this commitment. This commitment may be terminated by TC/LLG and all fees including the commitment fee retained and earned by TC/LLG in the event of any default during the term of this commitment or in the event of the following:

    i.    If the borrower shall fail to comply with any of the terms, conditions or stipulations hereof or if the Borrower enters into any agreement with another lender.

    ii.    In the event of sale, conveyance or other disposition of any of the collateral.

    iii.    In the event of a materially adverse change in the financial condition of the Borrower, Collateral or any Guarantor or in the event of death of any Guarantor.

    iv.    Any fraudulent material misrepresentation or any omission or concealment by the Borrower and / or their representatives or any Guarantor of any material fact.

16. In the event of any default during the term of this Commitment, LLG may, at its option, require immediate payment of the balance of the Fees and LLG may terminate the Commitment and retain the paid portion of the Commitment Fee.

17. The Borrower has the obligation to disclose all material facts, past and present, related to the Borrower, Guarantors, the Collateral, the transaction, etc. As additional Collateral Borrower agrees to allow Lender to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by Borrower in the event of loan Default.

18. This Commitment, together with the other Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter of this Mortgage Loan, and supersedes all prior written or verbal proposals, negotiations, agreements, and any understanding relating to such subject matter. In entering into this agreement, Borrower acknowledges that it is relying on no statement, representation or agent of TC/LLG, except for the agreements of TC/LLG set forth herein.



**Terrace│Capital®**
Real Estate Investment Banking Services

19. This Loan Commitment may be executed in any number of counterparts, each in which shall be considered an original. Delivery of an executed copy by one party to the other, via facsimile, or email shall constitute a valid delivery.



20. Borrower and Guarantor(s) consent to the jurisdiction of any state or federal court sitting in the State of New York for adjudication of any dispute between the Borrower and Guarantor(s), their agents, servants and/or employees and TC/LLG under any theory of law in connection with, out of, or otherwise relating to this Commitment and any related transactions and that venue shall be proper in any such court to the exclusion of the courts in any other state or country. The Borrower further agrees that such designated forum is proper and convenient.

21. Borrower and Guarantor(s) must provide all necessary documentation that is in compliance with the Patriot Act and its required Customer Identification Program (C.I.P.) as it pertains to financial institutions.

22. It is understood that this is the a mutually negotiated agreement between the Borrower and TC/LLG, once accepted and signed by all parties it will be the only binding agreement we have. Furthermore it is understood that this commitment supersedes all previous communications and correspondence without limitation.

23. Borrower understands that it is obligated to disclose to TC/LLG the name of any third party fee provider, and that such third party fee provider is required to sign this agreement in such capacity. In the event that the borrower fails to make such disclosure, Borrower agrees to indemnify and hold TC/LLG harmless against any and all claims asserted by such undisclosed party.

24. Borrower fully understands that TC/LLG can not and would not enter into this commitment without Borrowers complete agreement to all of the aforementioned terms and conditions and stipulations on line items 1 through 24.

TC/LLG shall have no obligation with respect to the Loan unless and until this commitment letter is fully executed and received by TC/LLG along with the commitment fee of One Hundred Twelve Thousand Dollars ($112,000.00), any partial fee received will be held until the entire commitment fee is received.

Best,

Dennis Bahn
Managing Partner
Terrace Capital, Inc.
One Bridge Plaza, 2nd Fl.
Fort Lee, NJ 07024
T. 201.849.4450 / 201.849.4451
F. 201.221.8366.



The undersigned does hereby accept this Commitment and does hereby agree to keep and perform each and every item and condition herein before set forth and does acknowledge that the performance of such terms and conditions and stipulations are obligations of the undersigned. Please sign and return this agreement. If not accepted, this offer will expire Five (5) P.M. Eastern Standard Time, January 16, 2012. If you have any questions, please feel free to contact us.

**On behalf of Montage Mountain Resort, LP and individually as guarantors:**

X _____

Peter Salvatori
Montage Mountain Resort, LP

**EXHIBIT "4**



**Kaplin|Stewart**
*Attorneys at Law*

Simi Kaplin Baer
Direct Dial: (610) 941-2657
Direct Fax: (610) 684-2036
Email: skbaer@kaplaw.com
www.kaplaw.com

January 19, 2012

**VIA EMAIL & FEDERAL EXPRESS**
Mr. Dennis Bahn
Managing Partner
Terrace Capital, Inc.
One Bridge Plaza, 2nd Floor
Fort Lee, NJ  07024

**VIA EMAIL & FEDERAL EXPRESS**
Mr. John Dragone
Terrace Capital
65 Broadway, 7th Floor
New York, NY  10006

**VIA EMAIL & FEDERAL EXPRESS**
Mr. Dennis Bahn
44 River Edge Road
River Edge, NJ  07661

Re:    <u>Peter Salvatori</u>

Dear Mr. Bahn and Mr. Dragone:

Please be advised that this office has been retained to represent Peter Salvatori ("**Salvatori**") in connection with a proposed loan from Terrace Capital, Inc. ("**Terrace**").

On October 7, 2011, Dennis Bahn executed a Letter of Interest for Salvatori ("**Letter of Interest**") in his capacity as Managing Director of Terrace.  A copy of the Letter of Interest is enclosed herein for your reference.  Pursuant to the Letter of Interest, Salvatori delivered a check for Seventy One Thousand Dollars ($71,000.00) ("**Deposit**") to Terrace.

On January 13, 2011, Michael D. Ryan on behalf of Salvatori terminated the Letter of Interest and requested the return of the Deposit.

To date, the Deposit has not been returned.

**Kaplin Stewart Meloff Reiter & Stein, PC**
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA  19422-0765
610-260-6000 tel

Mr. Dennis Bahn
Mr. John Dragone
January 19, 2012
Page 2

We hereby demand that Terrace return the Deposit immediately.  If the Deposit is not returned in full to Salvatori by 5 pm, Monday, January 20, 2011, we will assume that you do not intend to return the Deposit.  In that event, Salvatori will have no choice but, and intends to, take all appropriate action to exercise his rights and remedies.

**PLEASE BE GUIDED ACCORDINGLY.**

Very truly yours,

Simi Kaplin Baer

SKB:kae
Enclosure

cc:     Peter Salvatori *(via email)*

2413272v1

# Terrace | Capital
### Real Estate Investment Banking Services

October 7, 2011

**Via Email: jyip@vantage-nyc.com**
Montage Mountain Resorts, LP
Mr. Peter Salvatori
C/O Vantage Mortgage, LLC
Mr. John Yip
45-43 Bell Blvd., 3rd Floor
Bayside, NY 11361

> Re:  Letter of Interest / $11MM Bridge Loan
> Premises: 1000 Montage Mountain Road, Scranton, PA 18507

Dear Mr. Salvatori,

Thank you for your interest in the Terrace Capital ("TC") commercial lending programs. The following Letter of Interest is based upon our analysis of the information provided by you regarding the above transaction. This Letter of Interest may be accepted on the following terms within ten (10) days of the date of this letter expiring on October 17, 2011. Thereafter, the terms may be modified to reflect changed market conditions, if any, and/or reissued at the election of TC.

| | | |
|---|---|---|
| Borrower | : | Montage Mountain Resort, LP |
| Loan Amount | : | $11,000,000 (Not to exceed 55% of appraised value or cost) |
| Purpose | : | To provide funding for the bridge loan & permanent loan request for property located at 1000 Montage Mountain Road, Scranton, PA 18507 |
| Interest Rate | : | 12% (Bridge Loan) & 5 Yr Treasury + 450 Bps (Permanent) |
| Term | : | 12 Months plus 6 Months Extension for Bridge Loan and 5 Year Fixed Term for Permanent Loan. |
| Amortization | : | Interest Only for Bridge Loan and 25 Year Amortization for the Permanent Loan. |
| Loan Fee | : | Two (2%) Percent for Bridge Loan and One (1%) Percent for Permanent Loan. |
| Interest Guarantee | : | 18 Months for Bridge Loan. |
| Recourse | : | Full recourse to all Sponsors of the Borrowing entity |
| Cash Management Account | : | May be required. |
| Escrows | : | Real estate taxes and Insurance |

# Terrace | Capital
Real Estate Investment Banking Services

| | | |
|---|---|---|
| Expenses: | : | The Borrower(s) agrees to pay all costs associated with the Loan including but not limited to, underwriting fees, attorney's fee, lien searches, filing fees, insurance premiums, appraisal reports, environmental reports and engineering reports whether or not closing occurs. TC Underwriting Fee: $5,500 |
| Appraisal | : | At Borrower's expense, Lender shall obtain a current appraisal addressed to it which renders an "as completed" value of not less than $11,000,000 |
| Structural and Environmental Inspection | : | At Borrower's expense, Lender shall obtain a Phase I environmental and structural inspection of the subject property to be performed by a qualified environmental and structural inspector. The inspection(s) shall be in a form and substance acceptable to the Lender and shall confirm that the Collateral Property is free from hazardous materials or other unacceptable contaminants. The structural inspection must also indicate the absence of serious structural or mechanical conditions requiring immediate attention in order to preserve mechanical and safety functions as well as the safety and wellbeing of the tenants. |
| Title Insurance | : | Title to the Collateral Property named herein shall be subject to the Lender's approval and shall be good and marketable, free and clear of all defects, liens, encumbrances, security interests, restrictions and easements which are not acceptable to the Lender. The Borrower shall provide, at its expense, title insurance policies in the maximum amount to the loan issued by a title insurance company approved by Lender which insured the full amount of the loan and the priority of the Lender's first lien. The title insurance policy shall be satisfactory to the Lender in all aspects and shall provide such other coverage as may be required by the Lender, including coverage against loss or damage due to a forfeiture or reversion of title caused by a breach of any covenant affecting the property to be covered by title insurance. The title policy may contain no exceptions unacceptable to lender including survey exception and shall include ALTA endorsement 8.1 (environmental protection lien) and such other endorsements as shall be required by Lender. Title policy will be ordered by Terrace Capital, Inc. |
| Survey | : | Two (2) copies of an ALTA survey prepared for the Lender, certified to Title Insurer and the Lender, its successors and assigns, and insurable by Title Insurer, by a land surveyor licensed in the state where the Collateral Property is located and acceptable to the Lender. The survey shall comply with the Lender's minimum standards for surveys and shall include, without limitation: (i) the boundaries of the Collateral Property by courses and distances, together with a metes and bounds description corresponding to such survey; (ii) the location of all improvements; (iii) the location and width of all easements, utility lines, rights-of-way and building set-back lines and notes referencing the book and page numbers for the instruments   granting the same; (iv) the location of all encroachments and restrictions, if any, affecting the property (to the extent the same may be located); and (v) the certification of the surveyor which shall address (a) whether the roads abutting the Collateral Property are publicly dedicated, (b) the acreage of the Collateral Property, (c) whether |

# Terrace│Capital

Real Estate Investment Banking Services

the parcels comprising the Collateral Property (if applicable) are contiguous without any gores, gaps, overlaps or strips of land separating them, (d) whether or not any portion of the Collateral Property is located in a "special flood hazard area", as that term is used in the National Flood Reform Act of 1994, and designating any such property, (e) and such other matters as may be reasonably requested by the Lender or its counsel.

| | | |
|---|---|---|
| Insurance | : | Original or duplicate policies of insurance, or evidence of insurance on an ACORD 28 or 29 form (in the case of property insurance) or ACORD 25 form of certificate (in the case of liability insurance), each in affect for a period of not less than nine (9) months following the loan closing date, as follows: (i) "All-Risk" fire and extended coverage hazard insurance (non-reporting Commercial Property Policy with Special Cause of Loss form), covering the Collateral Property in an aggregate amount not less than 100% of the agreed upon full insurable replacement value of the Collateral Property, not less than nine (9) months coverage for loss of rents or business interruption, and naming the Lender, its successors and assigns as their interest may appear, as the first mortgagee under a standard mortgagee endorsement clause; (ii) builder's risk coverage in an amount sufficient to cover the first deed of trust; (iii) comprehensive general public liability insurance covering injury and damage to persons and property with limits acceptable to the Lender and naming the Lenders and its successors and assigns as their interest may appear, as additional insured; (iv) if the Collateral Property is located within "a special flood hazard area" as identified by the Secretary of Housing and Urban Development under the National Flood Insurance Reform Act of 1994, flood insurance in the amount equal to the less of (a) the agreed upon full insurable replacement value of the Collateral Property (less any value attributable to the Collateral property) or (b) the maximum available amount through the Federal Flood Insurance Program, and naming the Lender, its successors and assigns as their interests may appear, as the first mortgagee under a standard mortgagee endorsement clause. The above described insurance certificate(s) shall be specifically amended as necessary to establish that the certifying insurer expressly agrees to give Lender not less than 30 days' prior written notice of any policy cancellation (not merely that the insurer will "endeavor" to do so). Each policy (if more than one) must be issued by an insurer accepted to Lender in an amount equal to the amount of the maximum loan amount of the combined notes. |
| Flood Certification/ Insurance | : | The Borrowers shall provide such other coverage and certification relating to flood hazards (if any) as shall be acceptable to Lender. |
| Laws and Regulation | : | The ownership and operation of the Collateral Property must be approved by all federal, state, and local authorities having jurisdiction and must comply with all applicable federal, state, and local laws, rules, regulations and ordinances. |
| Other Special Covenants | : | Other covenants standard and customary for transaction of this type including but not limited to limitations on additional indebtedness and |

# Terrace | Capital ™
### Real Estate Investment Banking Services

limitations on ownership changes without the prior written consent of the Lender, shall be observed during the term of this loan.

| | | |
|---|---|---|
| Subordinate Financing | : | Subordinate financing shall be prohibited for the life of the loan without the prior written consent of Lender. |
| Confidentiality | : | This Letter of Interest is delivered to you with the understanding that neither it, nor its substance, will be disclosed to any third party, except your accountant, attorney or financial advisor with respect to this transaction or where disclosure is required by law. |
| Collateral | : | 1) A first priority mortgage on the Collateral Properties also known as Sno Mountain Ski Report located at 1000 Montage Mountain Road, Scranton, PA 18507.<br>2) Assignment of Leases and Rents |
| Warranties | : | Borrower(s) and Guarantor(s) hereby warrant that (i) there is no litigation or administrative or judicial proceedings existing, pending or planned that would in any manner adversely affect the Borrower's ability to repay, (ii) that the Loan proceeds will be used solely for the commercial and business purposes of Borrower's and not for personal, family or household purposes, (iii) that any litigation now pending or threatened against Borrower is adequately covered by existing liability insurance. All warranties shall be true as of the date of Loan closing. Borrower agrees to promptly inform Lender of any event which causes any of these warranties to become untrue and from time to time, to execute and deliver to Lender, upon request, such affidavits or certifications affirming the continued truth of said warranties as Lender may request. |
| Time is of the Essence | : | Time shall be of essence for each and every provision of the Letter of Interest and all other documents, agreements and contracts in connection with and governing the loan. |
| Entire Agreement | : | This term sheet contains only an understating between the Lender and Borrower and supersedes any prior understanding and agreements between them in respect to the subject matter hereof. |
| Sale/Syndication | : | TC reserves the right to sell its interest in this Letter of Interest and/or Loan in whole or Part, at its discretion. |
| No Assignment | : | This letter shall not be assignable |
| Broker | : | Vantage Mortgage LLC. Borrower acknowledges and agrees that a fee of Two (2%) Percent of the loan amount is payable by the Borrower to the above identified "Cooperating Broker" at closing of the loan. Such fees are not included in the loan fee(s) to be paid to Terrace Capital. Borrower hereby acknowledges and agrees that TC is not required to compensate the above identified Cooperating Broker or otherwise collect a fee on behalf of such Cooperating Broker. |

# Terrace | Capital™
Real Estate Investment Banking Services

All brokers, agents and third party intermediaries are strictly independent, and are not authorized to represent Terrace Capital as a company, nor make any statements of intent, policy, claims or promises on behalf of the company or any of its executives or staff. TC shall not be bound or obligated by, and no person shall take action in reliance upon, statements of any such independent third parties. Brokers represent their own clients to TC, and do not "represent" TC to any potential or current clients. All third party contracts and claims purporting to provide or include TC services, in whole or in part are willfully and knowingly fraudulent misrepresentations. Any retainers requested or received by or paid to any third parties are not received by TC, do not create a client relationship and do not cause the provisioning of or change in any TC services. All TC services are provided strictly in the context of a direct and contractual financial institution relationship.

| | |
|---|---|
| Closing limitation | This Loan must close by no later than November 30, 2011, TC may withdraw this letter in its sole and absolutely discretion. |
| Other Terms and Conditions : | |

1.  Subject to acceptable Borrower/Sponsor credit history in Lender's sole and absolute discretion.

2.  Guarantor(s) global EBITDA (Earnings Before Interest, Taxes, Depreciation & Amortization) less all debt service payments (personal & business) must equate to a ratio of 1.25 to 1 or greater.

3.  Minimum net worth of Borrower requirement to be equal to 100% of the gross loan amount and minimum net liquidity of borrower to be equal to 5% of the gross loan amount.

4.  The form, structure and capitalization of the title owner and borrower must be satisfactory to TC.

5.  Site inspection performed by TC.

6.  Subject to other underwriting and legal terms and conditions precedent to settlement as determined by Lender.

Please be advised that this letter is not a commitment, but a memorandum based on our preliminary analysis of verbal and written information provided by you to Terrace Capital. Terrace Capital has relied on the accuracy of these representations in qualifying your loan and extending this offer for financing. Material misrepresentations will result in the immediate termination of this offer. Terrace Capital reserves the right to contact the Borrowers directly to verify and qualify certain due diligence material. The final terms of the loan including but not limited to loan amount, rates, and terms are subject to our receipt and review of the third party reports and the completed underwriting of the loan request.

If the terms and conditions of this letter are acceptable, please so indicate by signing the original of this letter in the appropriate spaces and return to the undersigned at Terrace Capital, 1 Bridge Plaza, 2nd

65 Broadway, 7th Fl., New York, NY 10006 • One Bridge Plaza, 2nd Fl., Fort Lee, NJ 07024

# Terrace|Capital™
### Real Estate Investment Banking Services

Floor, Fort Lee, NJ 07024 within ten (10) days from the date hereof along with underwriting expense of $5,500, estimated third party report fee of $10,500 and good faith deposit equal to 50 basis point of requested loan amount. The deposit will be held by TC as possible penalty compensation should Borrower fail to close after Commitment is issued. If for any reason Terrace Capital elects not to issue a Commitment to the Borrower, excluding Borrower/Sponsor or Broker misrepresentation, Terrace Capital shall refund any remaining balance remitted by Borrower to Terrace Capital after deduction of expenses. If not received within the specified time period, this letter shall become null and void without notice.

We thank you for allowing Terrace Capital, Inc. to assist you on this loan request and look forward to working with you.

Sincerely,

Dennis Bahn
Managing Partner
Terrace Capital, Inc.
T. 201.849.4450 / 201.849.4451
F. 201.221.8366

By signing below, Borrower and key principals authorize Terrace Capital to procure credit reports on the key principals. The terms set forth herein are acceptable. Please provide a Due Diligence Checklist and proceed with my application.

_____        _10-18-11_
Borrower [or authorized agent] Signature        Date

_____        _____
Borrower [or authorized agent] Name        Date

_____        _____
Borrower [or authorized agent] Signature        Date

_____        _____
Borrower [or authorized agent] Name        Date